1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**ERNESTINE LUCY LANE,**               )     NO. EDCV 15-141-KS
      **Plaintiff,**                         )
    **v.**                                      )
                                       )     **MEMORANDUM OPINION AND ORDER**
                                       )
**CAROLYN W. COLVIN**, **Acting**          )
**Commissioner of Social Security,**       )
      **Defendant.**                        )
_____ )

**INTRODUCTION**

     Plaintiff filed a Complaint on January 23, 2015, seeking review of the denial of her application for supplemental security income ("SSI"). On February 11, 2016, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 28.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 29.) On August 18, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 21, 22, 23.) The Court has taken the matter under submission without oral argument.

1

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 21, 2011, plaintiff, who was born on November 25, 1964, protectively filed an application for SSI.[1]  (*See* Administrative Record ("AR") 19, 213.)  Plaintiff had previously filed three applications for Disability Insurance Benefits ("DIB"), which were denied on March 8, 2006, June 17, 2008, and July 20, 2009 respectively.  (AR 78.)  In her November 21, 2011 SSI application, plaintiff alleged disability commencing June 11, 2005, due to:  post traumatic stress; back injury; torn ligament in left knee; sleep apnea; and headaches.  (AR 233.)  Plaintiff previously worked as:  a bus driver (DOT 913.463-010); a certified nurse's assistant (DOT 355.674-014); a home caregiver (DOT 354.377-014); a medical assistant (DOT 079.362-010); a shuttle bus driver (DOT 913.663-018); a job coach (DOT 094.224-022); and a dump truck driver (DOT 902.683-010).  (AR 30, 53-54, 234.)  The Commissioner denied plaintiff's applications initially (*id.* 91) and on reconsideration (*id.* 107).  On January 22, 2013, plaintiff requested a hearing.  (*Id.* 122.)  On August 7, 2013, Administrative Law Judge Lawrence Duran ("ALJ") held a hearing.  (*Id.* 37-76.)  Plaintiff, who was represented by counsel, and Elizabeth Reynolds, the vocational expert ("VE"), testified at the hearing.  (*Id.* 41-76.)  On August 15, 2013, the ALJ issued an unfavorable decision, denying plaintiff's application for SSI.  (*Id.* 16-32.)  On November 21, 2014, the Appeals Council, after receiving additional evidence that it made part of the record, denied plaintiff's request for review.  (*Id.* 1-5.)

\\
\\
\\
\\
\\

---

[1]	Plaintiff was 40 years old on the alleged onset date and thus met the agency's definition of a younger person.  *See* 20 C.F.R. § 416.963(c).  On November 25, 2014, plaintiff became a person closely approaching advanced age.  *See id.* § 416.963(d).

1

2

## SUMMARY OF ADMINISTRATIVE DECISION

3

4      The ALJ found that, although plaintiff worked briefly in 2012, she had not engaged in

5  substantial gainful activity from the SSI application date of November 21, 2011.[2] (AR

6  21.) The ALJ further found that plaintiff had the following severe impairments: "lumbar

7  degenerative disc disease; herniated disc at L4-L5; rule-out thoracic radiculitis; stenosis and

8  instability at L4 to S1; lumbar L4 to S1 fusion status post hardware removal; cervical and

9  lumbar myoligamentous sprain and strain; L2 to L4 disc bulges with neural foraminal

10 narrowing and severe canal stenosis at L3-L4; left knee medial meniscus tear and Baker's

11 cyst; obesity; and osteoarthritis." (*Id.*) In reaching that determination, the ALJ noted that

12 plaintiff also suffered the "medically determinable impairments of mood disorder, post-

13 traumatic stress disorder (PTSD), and history of polysubstance abuse," but he found that

14 these impairments "considered singly and in combination, do not cause more than minimal

15 limitation in the claimant's ability to perform basic mental work activities and are therefore

16 nonsevere." (*Id.* 22.) The ALJ concluded that plaintiff did not have an impairment or

17 combination of impairments that met or medically equaled the severity of any impairments

18 listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925,

19 416.926). (*Id.* 23.) The ALJ determined that plaintiff had the residual functional capacity

20 ("RFC") to perform light work as follows:

21     [Plaintiff] has the residual functional capacity to perform light work . . . except

22     [she] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she

23     can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks;

24     she can sit for 6 hours out of an 8-hour workday with regular breaks; she has a

25     sit/stand option in 1 hour intervals; she can occasionally kneel, crawl, and

26

27  ---

[2]     Plaintiff alleged that she became disabled in June 2005, but the ALJ explained that SSI is payable only beginning
28  "the month following the month [the individual] filed the application" for benefits. (*See* AR 26); *see also* 20 C.F.R. §
    416.335; *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1000 n.1 (9th Cir. 2015).

crouch; she cannot climb ladders, ropes, or scaffolds; she should avoid machinery and heights; and she may be absent or off task 5 percent of the time.

(*Id.*)  The ALJ found that plaintiff was able to perform her past relevant work as a home caregiver (DOT 354.377-014) and was also capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the representative occupations of ticket clerk (DOT 211.462-010) and counter clerk (DOT 249.366-010).  (*Id.* 31-32.)  Accordingly, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset through the date of the ALJ's decision.  (*Id*. 32.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ

4

is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following errors: (1) the ALJ improperly weighed the medical evidence provided by treating and examining physicians; and (2) the ALJ improperly evaluated the credibility of plaintiff's statements about her condition. (Joint Stip. at 4-28.) For the reasons discussed below, the Court finds that the ALJ did not commit the errors alleged.

## I.      The ALJ Properly Evaluated The Medical Opinions.

Plaintiff contends that, in determining plaintiff's RFC, the ALJ either overlooked or improperly weighed the following three physicians' assessments of plaintiff's impairments and limitations: Dr. Sunny Uppal, orthopedic surgeon and a Qualified Medical Examiner for the State of California; Dr. Kenneth L. Nudleman, clinical professor of neurology and a Qualified Medical Examiner for the State of California; and Dr. Mark Bernhard, a doctor of

osteopathic medicine ("D.O.") and a Qualified Medical Examiner for the State of California. (*See* Joint Stip. at 4-9.)

The ALJ is required to articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons that are supported by substantial evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When, as here, it is contradicted by another doctor's opinion, a treating or examining physician's opinion may only be rejected if, after considering the factors set out in 20 C.F.R. § 416.927(c)(2)-(6) for evaluating medical opinions, the ALJ articulates "specific and legitimate" reasons supported by substantial evidence in the record. *Garrison*, 759 F.3d at 1012; *Orn*, 495 F.3d at 632. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012. These same factors guide the ALJ's evaluation of the opinion of other medical sources, including those of State agency physicians. *Id.* § 416.927(e)(2)(ii). Thus, an ALJ does not commit legal error *per se* by according greater weight to the opinion of a nonexamining State agency physician than to the contradictory opinion of a treating physician. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-03 (9th Cir. 1999).

\\
\\
\\
\\
\\

6

### A. Opinion of Dr. Uppal

#### 1. Background

Plaintiff began seeing Dr. Uppal in March 2006, in connection with her worker's compensation.  (*See* AR 316.)  However, pursuant to agency regulations, plaintiff was not eligible to receive SSI for any period before she filed her SSI application, in November 2011.  *See supra* note 2.  Nevertheless, the records show that, when plaintiff began seeing Dr. Uppal in 2006, she reported that she experienced back pain that was aggravated by repetitive use, prolonged sitting, kneeling, stairs, reaching overhead, pushing, pulling, lifting, prolonged standing and bending.  (AR 318.)  Dr. Uppal's physical exam revealed the following:  "exquisite tenderness in the midthoracic region;" "spasms in the low back with 40 degrees of flexion and 10 degrees of extension;"[3] and "straight leg raising" that was positive for back pain.  (AR 320.)  On October 16, 2006, plaintiff underwent "anterior decompression and fusion L4-5 and L5-S1" surgery.  (AR 404.)  By February 7, 2007, Dr. Uppal characterized plaintiff's condition as "improving."  (AR 501.)  On March 21, 2007, Dr. Uppal examined plaintiff and wrote that plaintiff's preoperative level of pain had "very much decreased" but observed that plaintiff's straight leg raising was again positive for back pain.  (AR 507.)

On August 7, 2007, Dr. Uppal stated that plaintiff's "preoperative level of pain is gone [but] [s]he does have pain attributable to the hardware" and he diagnosed her with, *inter alia*, "symptomatic hardware, lumbar spine."  (AR 523-24.)  Dr. Uppal also found that plaintiff's lumbar flexion had decreased from 60 to 40 degrees and her straight leg raising was positive for pain.  (AR 523.)  On December 10, 2007, plaintiff underwent surgery to remove the hardware from her surgery a year earlier.  (AR 591.)

---

[3]    Other records indicate that a "normal" patient would exhibit 90 degrees of flexion and 25 degrees of extension. (*See* AR 682.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In May 2008, plaintiff saw both Dr. Uppal (AR 658-61) and a neurologist, Dr. Bailey (AR 651-54).   Dr. Uppal reported that plaintiff described her back pain as "severe," "constant and . . . worsening," and "aggravated by repetitive use, prolonged sitting, squatting, kneeling, stairs, reaching overhead, pushing, pulling, lifting, prolonged standing and bending."  (AR 658.)  Dr. Bailey, however, reported that plaintiff had "minimal pain" resulting from her "status post an extensive back surgical procedure."  (AR 653.)

On February 10, 2011, Dr. Uppal reported that plaintiff continued to complain of back spasms and pain in her spine.  (AR 1068.)  He reported that her hobbies were: "reading, knitting, watching TV, gardening, bicycling, walking, swimming, basketball."  (AR 1071.)

On August 4, 2011, plaintiff exhibited 60 degrees of flexion and 10 degrees of extension with negative straight leg raising at her appointment with Dr. Uppal.  (AR 1125.)  Plaintiff informed Dr. Uppal that she was in beauty school, where she was doing "bending, stooping, [and] lifting," but "she will reduce this."  (AR 1125.)

On November 21, 2011, the date of plaintiff's SSI application, plaintiff reported to Dr. Uppal that she was experiencing left knee pain.  (AR 1129-30.)  A December 20, 2011 MRI of plaintiff's left knee revealed "an oblique tear of the posterior horn of the medial meniscus extending to inferior articular surface" (AR 1140) and, on physical examinations on February 22, 2011 and May 23, 2012, Dr. Uppal observed that plaintiff exhibited "a positive McMurray's" and "no laxity" in her left knee (AR 1199, 1202).  Although Dr. Uppal initially stated that plaintiff would be a candidate for arthroscopy if her condition did not improve (AR 1200), plaintiff received a negative McMurray sign at her August 24, 2012 appointment (AR 1205) and there is no indication that Dr. Uppal recommended plaintiff for surgery.

On April 27, 2012, in response to a questionnaire from the Department of Social Services, Dr. Uppal opined that plaintiff needed an assistive hand-held device for *all* standing and walking and could stand and walk without an assistive device for less than 2 hours in an eight hour workday.  (AR 1184.)

On March 21, 2012, one month prior to Dr. Uppal's opinion regarding plaintiff's need for an assistive hand-held device, Dr. Sarah L. Maze, a board eligible neurologist, examined plaintiff in connection with her application for SSI.  (AR 169-72.)  Dr. Maze observed, *inter alia*, that plaintiff "stands very promptly from the seated position" and "walks in a stable manner."  (AR 1172.)  Dr. Maze did not report plaintiff using, or reporting needing to use, an assistive device to stand or walk.  (*See generally* AR 1169-72.)  Based on her examination of plaintiff and review of plaintiff's medical records, Dr. Maze opined that plaintiff was able to stand and walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, occasionally lift 50 pounds, frequently lift 25 pounds, and perform fine motor activities with her arms and legs.  (AR 1172.)

On April 3, 2012, surgeon and State agency reviewing physician, S. Brodsky, D.O., opined that plaintiff could, *inter alia*:  stand, walk, and/or sit for six hours in an eight-hour workday; occasionally lift 20 pounds; and frequently lift and/or carry 10 pounds.  (AR 86-87.)  On November 9, 2012, pediatrician and State agency reviewing physician, V. Michelotti, M.D., also opined that plaintiff could:  stand, walk, and/or sit for six hours in an eight-hour workday; occasionally lift 20 pounds; and frequently lift and/or carry 10 pounds.  (AR 102-03, 107.)

### 2.    ALJ's Opinion

The ALJ stated that he assigned Dr. Uppal's opinion "little weight" because Dr. Uppal's opinion "is not supported by the objective evidence and it is inconsistent with the

record as a whole." (AR 29.) The ALJ pointed out that, in contrast with Dr. Uppal's assessment of plaintiff's severely limited ability to stand and walk, plaintiff "was able to walk with a normal gait and in a stable manner, stand from a seated position, and perform rhythmic-toe-tapping" during her consultative examination with Dr. Maze. (AR 29.) The ALJ gave "significant weight" to the reviewing physicians, Brodsky and Michelotti, because he found their opinions to be "reasonable and consistent with the record as a whole." (AR 28-29.)

### 3.   Analysis

Plaintiff contends that the ALJ improperly evaluated Dr. Uppal's opinion because "[t]he ALJ failed to offer specific and legitimate reasons for rejecting the opinions of Dr. Uppal," and more specifically, "[t]he ALJ's comment that Dr. Uppal's opinion was not supported by objective evidence could not be further from the truth" and "[t]he ALJ relies on the opinions of the consultative examiner to reject Dr. Uppal's opinions." (Joint Stip. at 8.) The Court disagrees.

First, the record shows that plaintiff made inconsistent statements about the degree to which her back impairment caused her pain and impaired her ability to perform activities of daily living. For example, in the same month that she told Dr. Uppal that she was in "severe" pain, she indicated to Dr. Bailey that her pain was "minimal." (*Compare* AR 658 *with id.* 653.) Similarly, in the same month that Dr. Uppal opined that plaintiff required an assistive device to stand or walk, plaintiff told Dr. Sohini P. Parikh, a board eligible psychiatrist, that in the course of a day she does "stretching and exercise, watches TV, cooks, does light work, knits and crochets" and indicated that she "has no difficulty completing household tasks." (AR 1177 – April 15, 2012.) Plaintiff's inconsistent statements about her subjective symptoms hindered Dr. Uppal's ability to provide an accurate assessment of plaintiff's pain and functional limitations.

In addition, the objective evidence before the ALJ refuted Dr. Uppal's opinion that plaintiff required a "cane and walker" for "*all* standing and walking."  (AR 1184 (emphasis added).)  First, the month before Dr. Uppal issued his opinion, Dr. Maze, a board eligible neurologist, observed plaintiff "stand[] very promptly from the seated position" and "walk[] in a stable manner" without an assistive device.  (AR 1172.)  Plaintiff also appeared at her August 7, 2013 hearing before the ALJ without "canes and walkers."  (AR 65 ("I know I didn't come in here with canes and walkers").)

Finally, the record suggests that, to the extent plaintiff's left knee meniscus tear ever caused the degree of functional limitations assessed by Dr. Uppal in April 2012, those limitations were short lived because, by August 2012, plaintiff's condition had improved to such an extent that Dr. Uppal never recommended plaintiff for arthroscopy.  (*See generally* AR 1205 (8/24/2012 – negative McMurray sign); *see also* AR 1200 (2/22/2012 – "[i]f [plaintiff's] symptoms continue, she will be a candidate for arthroscopy of the left knee")).

In view of the foregoing, the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for finding that Dr. Uppal's April 2012 opinion was entitled to "little weight" because it was "not supported by the objective evidence," including Dr. Maze's personal observations of plaintiff, and was "inconsistent with the record as a whole."  (AR 29); *see also Garrison*, 759 F.3d at 1012.  Accordingly, the ALJ's assessment of Dr. Uppal's opinion is affirmed.

//
//
//
//
//
//

11

**B.  Opinion of Dr. Nudleman**

**1.   Background**

On April 22, 2009, Dr. Kenneth L. Nudleman, clinical professor of neurology, examined plaintiff in connection with her worker's compensation claim and opined that, based on his review of plaintiff's electroencephalogram, computerized digital EEG, brain MRI, physical examination, and sleep study results, plaintiff's suffered from:  posttraumatic headaches; posttraumatic dizziness; posttraumatic stress; and disorder of sleep and arousal. (AR 822.)  Dr. Nudleman added that he considered plaintiff's headaches to be "frequent and slight" and her disorder of memory, attention, and concentration to be "halfway between mild and slight on a constant basis."  (AR 822.)  Dr. Nudleman opined that plaintiff should be precluded from:  commercial driving; working on platforms greater than 2 feet; climbing ladders; working on rooftops; working near rapid moving machinery or cutting machinery; and working in an environment where she is subject to "constant multitasking."  (AR 823.) In a "Supplemental Medicolegal Report" prepared on January 12, 2010, Dr. Nudleman added that, in addition to being precluded from commercial driving, plaintiff should not drive when she is sedated.  (AR 994.)

**2.   ALJ's Opinion**

The ALJ adopted significant portions Dr. Nudleman's 2009 and 2010 opinions, finding that plaintiff "cannot climb ladders, ropes, or scaffolds," "should avoid machinery and heights," and "may be absent or off task 5 percent of the time."  (AR 23.)  However, the ALJ also pointed out that Dr. Nudleman's 2009 and 2010 opinions assessed plaintiff's functional limitations at a time several years prior to November 2011, when plaintiff first applied, and thus became eligible, for SSI benefits.  (*See id.* at 26 (including Exhibit 2F among the "significant amount of evidence [that] is from the period of time prior to

[plaintiff's] eligibility for benefits").)   There is no opinion or other medical evidence provided by Dr. Nudleman for the period in which plaintiff is eligible for SSI benefits.

### 3.   Analysis

Plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Nudleman that plaintiff should not drive commercially or while sedated and should not work in an environment where she is subject to "constant multitasking" because he "failed to state any reason whether he accepted or rejected [this portion of Dr. Nudleman's] opinions."   (Joint Stip. at 9, 16.)

The ALJ's assessment of plaintiff's mental limitations, *i.e.*, that that plaintiff "may be absent or off task 5 percent of the time," is consistent with Dr. Nudleman's opinion that plaintiff is unable to perform "*constant* multitasking."   (*Compare* AR 23 *with id.* 823 (emphasis added).)   However, the ALJ did not adopt Dr. Nudleman's opinion that plaintiff should not engage in commercial driving or driving while sedated.   (*Compare* AR 23 *with id.* 823, 994.)   The ALJ's only rationale for omitting some portion of Dr. Nudleman's opinion was that Dr. Nudleman's opinion did not concern plaintiff's functional limitations during the period for which she was eligible to receive SSI benefits.   (*See* AR 26.)

However, regardless of whether the ALJ erred in failing to more fully discuss Dr. Nudleman's opinion concerning driving, any error is harmless because the occupations that the ALJ found plaintiff could perform – home caregiver, ticket clerk, and counter clerk – do not require driving.   (*See* AR 32); *see also* DOT 354.377-014, 211.462-010, 249.366-010; *Brown-Hunter*, 806 F.3d at 492 (harmless error exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'") (internal citations omitted).   Accordingly, even if the ALJ had

included Dr. Nudleman's restrictions on driving in his assessment of plaintiff's RFC, it would not have altered his ultimate nondisability determination.

### C. Opinion of Dr. Bernhard

#### 1. Background

On January 26, 2009, Mark Bernhard, D.O., commenced treating plaintiff in connection with her worker's compensation claim. (*See* AR 676-87.) At that time, plaintiff presented with the following complaints:  frequent pounding headaches; numbness on the top of her head; forgetfulness and trouble sleeping; limited range of motion, popping, grinding, and radiating pain in her neck; constant dull aching pain in the low back with frequent sharp pain; difficulty sleeping and remembering things; and, *inter alia*, mood swings.  (AR 678-79.)  On physical examination, plaintiff exhibited:  a normal gait; the ability to stand on heels and toes without difficulty; 50 degrees of forward flexion in her lumbosacral spine; and 10 degrees of extension in her lumbosacral spine.  (AR 682.)

A year later, on January 25, 2010, Dr. Bernhard changed plaintiff's work status to "modified duty" with the following limitations:  "patient is not to lift greater than 20 pounds; avoid heavy pushing and pulling; the patient is not to bend greater than 4 times per hour; patient is limited to standing or walking occasionally; patient is limited to climbing occasionally."  (AR 1001.)  Dr. Bernhard maintained these functional limitations at plaintiff's subsequent visit.  (AR 1003-04 – February 22, 2010.)

In his final evaluation, dated April 2, 2010, Dr. Bernhard observed that plaintiff exhibited 50 degrees of forward flexion and 5 degrees of extension in her lumbosacral spine (AR 1041) and adopted the following functional limitations:  plaintiff is not to lift, push, or pull greater than 20 pounds; plaintiff is not to bend greater than 2 times per hour; plaintiff is

limited to squatting, kneeling, and climbing occasionally; plaintiff "is restricted to sitting for 0.5 hours at a time for 4 hours;" plaintiff is advised to frequently change position; and plaintiff must avoid stressful situations and be able to work at her own pace. (AR 1045.) On August 30, 2010, Dr. Bernhard increased the amount of time that plaintiff could sit consecutively from 30 minutes to one hour. (AR 1056.)

The record does not contain any opinions from Dr. Bernhard during, or immediately preceding, the period for which plaintiff is eligible for SSI benefits. Instead, the medical opinion evidence regarding plaintiff's physical functional limitations during that period is limited to the opinions of Drs. Uppal, Maze, Brodksy, and Michelotti, which are discussed above. Critically, Dr. Maze, Dr. Brodsky, and Dr. Michelotti all opined that plaintiff was able to sit for six hours in an eight hour workday. (AR 87, 102, 1172.) Additionally, at the August 7, 2013 hearing, plaintiff testified that she could sit for two to three hours in an eight-hour workday. (AR 56.)

## 2. ALJ's Opinion

The ALJ adopted some portions of Dr. Bernhard's April 2010 opinions, finding that plaintiff "can lift and/or carry 20 pounds occasionally," "can occasionally kneel, crawl, and crouch," and "requires a sit/stand option in 1 hour intervals." (*Compare* AR 23 *with id.* 1045, 1056.) The ALJ did not adopt Dr. Bernhard's opinion that plaintiff is limited to 4 hours of sitting total. (*Compare* AR 23 *with id.* 1045.) As with Dr. Nudleman's opinion, the ALJ did not articulate reasons for either adopting or discounting portions of Dr. Bernhard's April 2010 opinions, except to include those opinions among the medical evidence that predated plaintiff's eligibility for SSI benefits – in Dr. Bernhard's case, by more than a year and a half. (*See* AR 26 (including Exhibit 4F among the "significant amount of evidence [that] is from the period of time prior to [plaintiff's] eligibility for benefits").)

15

### 3.   Analysis

Plaintiff contends that the ALJ improperly evaluated the April 2010 opinion of Dr. Bernard that plaintiff is limited to sitting no more than 4 hours in the course of a day when he "failed to state *any* reason, let alone a specific and legitimate reason for rejecting the opinions of Dr. Bernhard." (Joint Stip. at 8-9 (emphasis in original).)  However, the ALJ did not err in declining to consider Dr. Bernhard's April 2010 opinions on the grounds that they reflected plaintiff's functional limitations at a time one year and six months before she applied for SSI.  *Cf. Dowdy v. Astrue*, No. EDCV 11-1111-MAN, 2013 WL 395039, at *5 (C.D. Cal. Jan. 31, 2013) (affirming ALJ's decision to reject a medical opinion based on physical examinations that occurred six months prior to the date the plaintiff applied for SSI); *Moralez v. Astrue*, No. EDCV 11-155-OP, 2011 WL 3861694, at *4 (C.D. Cal. Aug. 31, 2011) (a plaintiff's suicide attempt that occurred almost eighteen months prior to her application for SSI provides some background for the plaintiff's affective mood disorder but does not support a finding of disability at the time of the application, especially in light of the other evidence of record); *Dotson v. Astrue*, No. 1:10-cv-00243 SKO, 2011 WL 1883468, at *6 (E.D. Cal. May 17, 2011) (describing an opinion rendered almost a year before the filing of plaintiff's SSI application was "stale and not time-relevant to [p]laintiff's current claim of disability," especially as compared to another opinion rendered one month after the application was filed).

Drs. Maze, Brodsky, and Michelotti uniformly opined that, at times during the period for which plaintiff is eligible for SSI, plaintiff could sit for six hours in an eight-hour workday (AR 1172, 86, 102), and plaintiff, who was represented by counsel throughout these proceedings, introduced no medical opinions from the relevant period, or even from the 12 months prior to the relevant period, to contradict this assessment.  *See also* 20 C.F.R. §§ 416.335, 416.912(d)(2); *Valentine v. Comm'r of Soc. Sec.*, 575 F.3d 685, 689 (9th Cir.

16

1   2009) (claimant bears the burden of proof at steps one through four of the sequential

2   analysis).

3

4   For the reasons stated above, the ALJ's assessment of the medical evidence and

5   opinions provided by Drs. Uppal, Nudleman, and Bernhard does not warrant reversal.

6

7   **II.    The ALJ Properly Evaluated Plaintiff's Credibility.**

8

9   **1.   Background**

10

11   The second disputed issue concerns the ALJ's assessment of the credibility of

12   plaintiff's statements about her symptoms and functional limitations.  (*See* Joint Stip. at 17.)

13   In an adult function report completed on February 21, 2012, plaintiff stated that her daily

14   activities consisted of the following:  "make bed sometimes, bathe, dress (sometimes), cook,

15   watch TV, or get out if I have to, eat, go to bed."  (AR 248.)  She stated that her spasms

16   don't allow her to take care of herself the way she would like, and the pain in her back and

17   knees makes it hard for her to get out of the bathtub.  (AR 249.)  She stated that she prepares

18   "quick and easy" daily meals and, when feeling ok, does the "usual" household chores, "like

19   cleaning, laundry, ironing."  (AR 250.)  She wrote that, when she leaves the house, she

20   walks, rides in a car, and uses public transportation.  (AR 251.)  She shops for groceries,

21   household items, and clothing.  (AR 251.)  Her hobbies include "sports, TV, reading, music,

22   dancing, [and] church," activities that she engages in "as often as [she] can . . . depend[ing]

23   on [her] pain tolerance."  (AR 252.)

24

25   At the August 7, 2013 hearing, plaintiff testified that she is able to take care of her

26   personal hygiene, mop, sweep, vacuum, do the dishes, and do the laundry.  (AR 44.)  She

27   testified that she goes shopping once or twice a month and carries the shopping bags herself.

28   (AR 45.)  She likes to cook, but can only cook for 30-45 minutes before her pain intensifies.

17

(AR 60.)  During the day, she reads, listens to music, watches TV, and occasionally goes to her pool.  (AR 45.)  Her hobbies include crocheting, going to church, and, very occasionally, going to see a movie.  (AR 45.)  She testified that, on average, she watches TV for four hours a day.  (AR 45.)  She also uses the computer for "a couple of hours off and on."  (AR 46.)  When plaintiff goes to church, services last for an hour to an hour and a half and she is able to "participate in the sitting, standing, kneeling, whatever."  (AR 47.)  When asked why she felt she was unable to work, plaintiff answered:

> What keeps me from going to work is I'm in constant pain . . . I spasm a lot and when I do my little hobbies or whatever, I can – when I flare up, I can lay down on my – I have to lay down on my floor to relax my body to stop the spasming or take my medicine so that I can feel better to whatever the next thing I have to do or need to do whether it be sit up or even just to watch TV because I'm always comfortable.

(AR 47 (errors in original).)  On a scale of one to ten, plaintiff said her pain before the pain medication was a seven, and, after taking her pain medication, was a five.  (AR 49-50.)  She testified that the only side effect from her pain medication was drowsiness.  (AR 52.)

The ALJ found that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her allegations about the intensity, persistence, and limiting effects of her symptoms were only "partially credible," and, thus, the ALJ discounted plaintiff's allegations that were inconsistent with the residual functional capacity he assessed.  (AR 25, 26.)  The ALJ explained that the credibility of plaintiff's testimony was undermined by its inconsistency with the objective medical evidence, plaintiff's relatively conservative treatment for her purportedly disabling back and knee pain, plaintiff's ability to engage in a variety of activities of daily living and socializing, and the fact that plaintiff had, at times, performed daily activities that were "greater" than what she

18

1  reported, including briefly holding down a job at Parking Concepts and seeking employment

2  after the alleged onset date.  (AR 25.)  The ALJ suggested that he believed plaintiff was

3  "exaggerat[ing] the severity of her symptoms."  (AR 25.)

4

5        **2.  Analysis**

6

7        An ALJ must make two findings before determining that a claimant's pain or

8  symptom testimony is not credible.  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102

9  (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented

10  objective medical evidence of an underlying impairment which could reasonably be

11  expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Lingenfelter*, 504

12  F.3d at 1036).  "Second, if the claimant has produced that evidence, and the ALJ has not

13  determined that the claimant is malingering, the ALJ must provide specific, clear and

14  convincing reasons for rejecting the claimant's testimony regarding the severity of the

15  claimant's symptoms" and those reasons must be supported by substantial evidence in the

16  record.  *Id.*; *see also Marsh*, 792 F.3d at 1174 n.2; *Carmickle v. Comm'r of Soc. Sec.*, 533

17  F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse

18  credibility finding . . . is supported by substantial evidence under the clear and convincing

19  standard").  The ALJ must "specifically identify the testimony [from the claimant that] she

20  or he finds not to be credible and . . . explain what evidence undermines the testimony."

21  *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

22  2001)).  "General findings are insufficient."  *Brown-Hunter*, 798 F.3d at 755 (quoting

23  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Further, "subjective pain testimony

24  cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical

25  evidence."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added)

26  (citation omitted).

27  //

28  //

19

Because plaintiff's subjective symptom testimony cannot be rejected on the sole ground that it is not fully corroborated by the objective medical evidence, *Rollins*, 261 F.3d at 857, the validity of the ALJ's adverse credibility determination depends on whether any of the ALJ's other reasons for finding plaintiff partially credible – her relatively conservative treatment for purportedly disabling pain, her ability to engage in a variety of activities, and her ability to, at least intermittently, perform daily activities that are "greater" than what she reported – are clear, convincing, and supported by substantial evidence in the record.  The Court finds that, because at least one of the ALJ's reasons for partially discounting plaintiff's testimony meets this standard, the ALJ's evaluation of plaintiff's credibility does not warrant reversal.  Specifically, the ALJ's determination that plaintiff performed activities that were "greater" than what she reported was a clear and convincing reason supported by substantial evidence for finding plaintiff only partially credible.  (AR 25.)

A claimant's daily activities bear on her credibility if the level of activity is inconsistent with her claimed limitations so as to contradict the claimant's testimony.  *See Reddick*, 157 F.3d at 722; *see also Orn*, 495 F.3d at 639.  Here, the ALJ noted that plaintiff had briefly held down a job at Parking Concepts and sought employment after the alleged onset date.  (AR 25.)  Specifically, in 2012, months after she filed her SSI application and seven years after the alleged onset date, plaintiff worked for a few months for Parking Concepts.  (AR 222, 228.)  Plaintiff testified that, around the same time, she applied to be a cashier at the market close to her home and to work at a gas station.  (AR 57.)

Evidence that a claimant holds herself out as available to work during the alleged period of disability is a proper grounds for discounting his complaints of disabling impairments.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (a claimant's employment and seeking of work while allegedly disabled are proper grounds for discounting his testimony); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)

20

1    (affirming the ALJ's adverse credibility finding due, in part, to claimant's holding himself

2    out as available to work).

3

4        In addition, the record is rife with other examples of plaintiff performing activities

5    that are greater than what she alleged she could perform.  For example, on July 14, 2009,

6    plaintiff underwent a clinical psychiatric examination by Donald Feldman, M.D., and

7    reported that she was not only able to take care of her personal needs without difficulty but

8    was also able to drive, cook, shop, and date.  (AR 877.)  On August 4, 2011, plaintiff

9    informed Dr. Uppal that she was in beauty school, where she was doing "bending, stooping,

10   [and] lifting." (AR 1125.)  On April 15, 2012, plaintiff told Dr. Parikh that, in the course of

11   a day she does "stretching and exercise" and indicated that she "has no difficulty completing

12   household tasks."  (AR 1177.)  Accordingly, the ALJ's determination that plaintiff's

13   statements about her symptoms and functional limitations were contradicted by her reports

14   of seeking employment, working, and generally engaging in daily activities "greater" than

15   what she alleged is a clear and convincing reason supported by substantial, if not

16   overwhelming, evidence in the record for finding plaintiff only partially credible.

17

18       Further, because the ALJ articulated at least one clear and convincing reason

19   supported by substantial evidence for his adverse credibility determination, to the extent the

20   ALJ erred in citing any of the other reasons he provided for his adverse credibility

21   determination, the error is harmless.[4]  *See Carmickle*, 533 F.3d at 1162 (an erroneous basis

22

23   [4]       The Court's finding of harmlessness is also supported by plaintiff's inconsistent statements to physicians about
her symptoms and functional limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (in weighing a

24   plaintiff's credibility, an ALJ may use ordinary techniques of credibility evaluation, including prior inconsistent
statements concerning symptoms).  As stated above, in the same month that plaintiff told Dr. Uppal that she was in

25   "severe" pain, she indicated to Dr. Bailey that her pain was "minimal."  (*Compare* AR 658 *with id.* 653.)  Similarly, in the
same month that Dr. Uppal opined that plaintiff required an assistive device to stand or walk, plaintiff told Dr. Sohini P.

26   Parikh, a board eligible psychiatrist, that in the course of a day she does "stretching and exercise, watches TV, cooks,
does light work, knits and crochets" and indicated that she "has no difficulty completing household tasks."  (AR 1177 –

27   April 15, 2012.)  Additionally, there are two medical opinions indicating malingering in the record.  First, following Dr.
Bailey's initial neurologic examination of plaintiff on May 13, 2008, Dr. Bailey stated that "[plaintiff's] current

28   neurologic examination suggests some functional element raising [an] issue of malingering."  (AR 653.)  Second, Donald
Feldman, M.D., an American Board of Psychiatry and Neurology diplomate, performed a clinical psychiatric evaluation

1   for an ALJ's credibility determination is harmless error if other valid reasons support that

2   determination).

### CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: July 11, 2016

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

---

on July 14, 2009 in connection with her worker's compensation claim and noted a "high likelihood" that plaintiff was attempting to exaggerate or fabricate symptomatic complaints and "some deliberate distortion of the clinical picture may be present." (AR 875, 876.)  Accordingly, given that the ALJ articulated at least one clear and convincing reason for his adverse credibility determination and that the record reveals multiple inconsistent statements and a pattern of malingering, any error by the ALJ with respect to his rationale for finding plaintiff less than fully credible is inconsequential to the ultimate nondisability determination. *See Brown-Hunter*, 806 F.3d at 492.